# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JUNE HILL,                                           Case No. 1:09-cv-800
     Plaintiff                                Dlott, J.
                                       Hogan, M.J.

     vs

CITY OF CINCINNATI, et al.,                          **REPORT AND RECOMMENDATION**
     Defendants.

     Plaintiff, a resident of Cincinnati, Ohio, brings this action under 42 U.S.C. § 1983 alleging

a violation of her constitutional rights against the City of Cincinnati and Cincinnati Police Officer

Scott Krauser, Lt. Hungler, and Sgt. Michael Williams.  This matter is before the Court on

defendants' motion to dismiss (Doc. 11), plaintiff's memoranda in opposition (Docs. 12, 14), and

defendants' reply memorandum. (Doc. 13).

## I. Motion to Dismiss Standard

     Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss pursuant

to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must

draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236,

(1974).  *See also Erickson v. Pardus,* 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly,*

550 U.S. 544, 555-56 (2007).  It is well-settled that documents filed by a pro se litigant must be

liberally construed and that "a pro se complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94; *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976).

     A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To avoid dismissal for failure to state a claim

for relief, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Although plaintiff need not plead specific facts, her statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93 (citations omitted). Plaintiff's factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Twombly,* 550 U.S. at 556. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**II. Factual allegations of the complaint.**

Plaintiff, an African American resident of Cincinnati, Ohio, is self-employed as a taxicab driver-owner (license #590) in the City of Cincinnati.  She alleges she is a member of the Baptist faith.

The complaint alleges that on June 21, 2008, plaintiff was given a citation for violating the "position of driver" ordinance (Cincinnati Municipal Code 408-29) requiring the driver of a taxicab to "remain in or beside the vehicle at all times when such vehicle is standing upon the city streets." (Doc. 3, ¶¶35-36).  Plaintiff alleges that this ordinance is unconstitutional on its face and effectively prohibits a taxi driver from ever leaving his or her vehicle to sleep or use the restroom. The complaint further alleges that this ordinance was "successfully" challenged in *Davis v. City of Cincinnati*, Case No. 1:00-cv-231 (S.D. Ohio),[1] resulting in the "fifteen minute rule" now found in the administrative laws distributed by the Public Vehicles Squad.  This rule permits taxicab parking at a parking meter in the downtown business district for a maximum of fifteen minutes "when engaged in loading or unloading packages or merchandise." (Doc. 3, ¶39). Plaintiff alleges that Cincinnati Municipal Code 408-29 is unconstitutionally vague and overbroad and not rationally related to the health, safety and general welfare of the public.

The complaint also alleges that on July 17, 2008, defendant Lt. Hungler[2] seized plaintiff's Public Vehicle Badge, *i.e.*, her taxi driver's license, based on plaintiff's failure to wear a "shirt with sleeves" in accordance with the City of Cincinnati Public Vehicle Squad Code for Taxicab Drivers.  Plaintiff alleges she was wearing a "summer dress" at the time and that while the code

---

[1]The docket sheet in *Davis* indicates the matter was settled and dismissed with prejudice on September 21, 2001. *See* Case No. 1:00-cv-231 (Doc. 22).  The docket sheet does not reveal the terms of the parties' settlement.

[2]Plaintiff mistakenly identifies the defendant as Lt. "Lungler" in her complaint.

permits female drivers to wear skirts, it says nothing about dresses. She alleges that females "do not wear shirts in this society," but rather "blouses," and that no regulations governing the wearing of blouses have ever been issues by the Public Vehicle Squad. (Doc. 3, ¶¶49, 53). Plaintiff states she was assessed "one violation mark" for violating defendant Hungler's "fantasy dress code." (Doc. 3, ¶54).

Additionally, the complaint alleges that plaintiff purchased a "courtesy vehicle" placard from the National Baptist Convention for $75.00 for use during the National Baptist Convention held in Cincinnati, Ohio in September 2008. She alleges that vehicles displaying "courtesy vehicle" placards provided transportation to conventioneers during the convention.

Plaintiff alleges that on September 7, 8, and 9, 2008, she provided transportation to conventioneers without incident. However, on September 10, 2008, when she parked her vehicle in the "courtesy vehicle" line at the Cincinnati Convention Center, she was approached by defendant Officer Krauser. Defendant Krauser confiscated the "courtesy vehicle" placard from plaintiff's vehicle and advised plaintiff that taxicabs could not be courtesy vehicles. Plaintiff demanded the return of the placard, but was refused and told to move her vehicle to the taxicab stand.

Plaintiff filed a complaint with the Cincinnati Police Department and an internal investigation was conducted. Plaintiff states she then picketed in front of the Convention Center while carrying a sign highly critical of the actions taken by police. Plaintiff alleges she was threatened with arrest and the issuance of citations by unnamed police officers who observed her protest, but she was not arrested or issued a citation.

4

Plaintiff states she received the decision of the Internal Investigations Section (IIS) of the Cincinnati Police Division in November 2008.  She alleges the decision contains false information "designed" by police "to implicate the Plaintiff in criminal activity and exonerate the tortfeasor Defendant officer Scott Krauser for his actions [of] September 10, 2008." (Doc. 3, ¶29).  The decision states that plaintiff "would not identify the person she purchased the placard from" and that "Specialist Krauser believed Ms. Hill had obtained a counterfeit placard." (Doc. 3, ¶30; Doc. 3, attachment).  The decision also states that plaintiff "refused to answer questions for IIS and she did not want the IIS investigation to continue because the National Baptist Convention was concluded." (Doc. 3, ¶32; Doc. 3, attachment).  Plaintiff alleges these allegations are false and damaged her reputation.  Plaintiff further alleges she was advised by the Office of Public Vehicles that no administrative rules governing the use of taxicabs as courtesy vehicles had been issued. (Doc. 3, ¶26).  She alleges the City of Cincinnati "is deliberately indifferent to the rights of its citizens to have fair impartial investigations of the police officers in its department, allowing knowingly false and defamatory information to be disseminated about the people filling (sic) complaints against the police." (Doc. 3, ¶34).

The complaint also alleges that defendant City of Cincinnati receives federal financial assistance from the United States Department of Justice and is subject to the requirements of 42 U.S.C. § 2000d et seq.  Plaintiff alleges that City of Cincinnati "detail" officers "discriminate in the issuing of enforcement citations against taxicab drivers of African American descent and other driver[s] of foreign origin, namely Africans and Persons of Middle Eastern descent." (Doc. 3, ¶73).  The complaint alleges that the detail officer routinely ignore violations by Caucasian pedestrians while citing taxicab drivers with violations of the Cincinnati Municipal Code.

Plaintiff alleges that on June 26, 2009, she received a citation for "Soliciting Rides" after a customer flagged her down in the street. She was later acquitted "when the judge realized I had been issued a ticket for 'hitchhiking.'" (Doc. 3, ¶80).

Plaintiff further alleges that one week before she filed the instant complaint, she was verbally harassed by defendant Officer Williams when she attempted to discharge a passenger at a business in the Mt. Adams neighborhood of Cincinnati. The complaint alleges that while there is a designated drop off point for cabs, it was full so plaintiff had no choice but to drop her passenger off at the business establishment. Plaintiff alleges that defendant Williams has harassed and threatened her since her protest at the Convention Center in September 2008.

Plaintiff alleges the following causes of action against the defendants based on the foregoing facts: (1) a violation of the First Amendment right to freedom of religion, association, and expression based on defendant Scott Krauser's actions; (2) a violation of the Fourth Amendment right against unreasonable seizures against defendants Krauser and Hungler for their respective unlawful seizures of plaintiff's "courtesy driver" placard and Public Vehicle License; (3) a violation of equal protection of the Fourteenth Amendment by defendants Krauser and Hungler by respectively destroying plaintiff's "courtesy vehicle" placard issued to plaintiff by the National Baptist Convention and by "trying to make [plaintiff] wear a shirt notwithstanding the fact that [she] is a woman." (Doc. 3, ¶90); (4) a violation of due process by all the defendants; (5) state law claims of false light invasion of privacy and character defamation against defendant Krauser; and (6) a violation of 42 U.S.C. § 2000d by the City of Cincinnati. Plaintiff seeks declaratory, injunctive, and monetary relief.

**III.  The Court does not lack jurisdiction over plaintiff's claims related to confiscation of the courtesy vehicle placard based on the reason advanced by defendants.**

Defendants contend the Court lacks jurisdiction over plaintiff's claims for prospective or monetary relief because plaintiff has no standing to seek such relief. (Doc. 11 at 4).  Defendants contend plaintiff lacks standing because her injury was proximately caused by her own culpable conduct, and not that of the defendants.  Defendants assert that plaintiff "attempted to use an unauthorized counterfeit courtesy vehicle pass and an unauthorized vehicle to improperly intrude into the National Baptist Convention." (Doc. 11 at 4).

Defendants ask the Court to take judicial notice of the public records supplied by defendants in support of their argument.  Specifically, defendants ask the Court to accept the factual conclusions reached by the City of Cincinnati's Internal Investigation Section that the placard confiscated by plaintiff was unauthorized and counterfeit and that plaintiff could not properly operate her taxicab as a courtesy vehicle. (Doc. 11, Exh. 1).  Even if the IIS decision is a public record, the conclusions reached by the person investigating plaintiff's complaint are offered by defendants for the truth of the matter, based in part on statements by third parties, and constitute inadmissible hearsay.  *See Nowell v. City of Cincinnati*, No. 1:03-cv-859, 2006 WL 2619846, 5 (S.D. Ohio Sept. 12, 2006) ("While the IIS Report is a public record pursuant to 803(8)(C), Rule 803(8) does not circumvent the hearsay rule; any double hearsay contained in a report is admissible only if each level of hearsay qualifies independently for a hearsay exception.").

In contrast, plaintiff's complaint alleges that the factual allegations in the IIS report have been fabricated to implicate plaintiff in criminal activity and exonerate defendant Krauser.  At this juncture, the Court must accept plaintiff's factual allegations as true for purposes of the motion to

7

dismiss. The Court cannot credit the conclusions contained in the IIS report finding that the placard was counterfeit and that plaintiff's vehicle could not be operated as a courtesy vehicle. As such, the Court must accept plaintiff's allegations that defendant Krauser confiscated a courtesy vehicle placard duly purchased by plaintiff from the National Baptist Convention and that no rules prohibited the use of taxicabs as courtesy vehicles. Plaintiff has standing to bring her constitutional claims arising from the confiscation of the placard and the Court should not dismiss her complaint for lack of standing.

## IV. The City of Cincinnati's motion to dismiss should be granted.

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege facts showing that: (1) she was deprived of a right secured by the Constitution or law of the United States; and (2) by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000). A municipality is a "person" for purposes of section 1983, *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690 (1978), and may be sued directly if the municipality caused a constitutional deprivation such that "it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122 (1992). The municipality, through its deliberate conduct, must be the moving force behind the constitutional deprivation. *Polk County v. Dodson*, 454 U.S. 312 (1981). To impose section 1983 liability on a municipality, the plaintiff must identify a policy or custom that caused the plaintiff's injury. *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 694.

A plaintiff may prove the existence of a policy or custom in four ways:

The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 546 U.S. 814 (2005).

Plaintiff's complaint, liberally construed, appears to allege a cause of action for a denial of due process against the City of Cincinnati in connection with Officer Krauser's confiscation of plaintiff's courtesy vehicle placard. Plaintiff seeks to hold the City of Cincinnati liable for Officer Krauser's actions based on the City's alleged failure to fairly investigate plaintiff's complaint against Officer Krauser. The complaint alleges the City of Cincinnati "is deliberately indifferent to the rights of its citizens to have fair impartial investigations of the police officers in its department, allowing knowingly false and defamatory information to be disseminated about the people filling (sic) complaints against the police." (Doc. 3, ¶34).

Plaintiff's complaint fails to state a claim for relief against the City of Cincinnati for a denial of due process because plaintiff has not identified the policy, custom, or practice of the City of Cincinnati that directly caused the injury she suffered. *Monell*, 436 U.S. at 690. Plaintiff has not alleged facts showing the City maintained a policy or custom of unfairly investigating complaints against the police. At a minimum, plaintiff must allege facts showing "the existence of a clear and persistent pattern of illegal activity" or facts showing the City was aware of prior unconstitutional actions by members of its police force but failed to thoroughly and fairly investigate other citizen complaints about such actions. *Thomas*, 398 F.3d at 429; *see also Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005). The only facts alleged by plaintiff relate to her individual circumstances involving the internal investigation of her complaint against Officer Krauser. Plaintiff's conclusory allegations against the City are in reality legal conclusions couched

as factual allegations and do not state a plausible claim for relief against the City. *Twombly*, 550

U.S. at 555.

Plaintiff also alleges she was convicted of violating the "Position of Driver" ordinance set

forth in Cincinnati Municipal Code 408-29, an ordinance plaintiff claims is facially

unconstitutional. Defendants assert that plaintiff is precluded from relitigating the claim in this

federal court because she previously litigated her challenge to CMC 408-29 in state court. *See*

*City of Cincinnati v. June Hill*, Case No. C080758 (1st Dist. Ohio App. Aug. 5, 2009) (Doc. 11,

Exh. 4).

The Court takes judicial notice of the Ohio Court of Appeals' decision in *City of*

*Cincinnati v. June Hill*, Case No. C080758 (1st Dist. Ohio App. Aug. 5, 2009). *See* Fed. R. Evid.

201; *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir.), *cert. denied*, 449 U.S.

996 (1980) (federal court may take judicial notice of state court proceedings). *See also City of*

*Heath, Ohio v. Ashland Oil, Inc.*, 834 F. Supp. 971, 981 (S.D. Ohio 1993). In *City of Cincinnati*

*v. June Hill*, Case No. C080758 (1st Dist. Ohio App. Aug. 5, 2009), the First District Ohio Court

of Appeals affirmed the decision of the state trial court finding plaintiff Hill guilty of violating

Cincinnati Municipal Code 408-29. The Court of Appeals' decision states:

> On appeal, Hill brings forth a single assignment of error, arguing that C.M.C.
> 408.29 is unconstitutionally vague and overbroad. Unfortunately, Hill did not
> properly raise these issues at trial. While C.M.C. 408.29 does appear to be
> unreasonable because it prohibits a taxicab driver from parking a taxicab on any
> public street in Cincinnati unless he remains in or beside the taxicab, it is well
> settled that the failure to raise the issue of the constitutionality of an ordinance or
> statute in the trial court, when the issue is apparent at the time of trial, constitutes a
> waiver of the issue on appeal. Because Hill did not argue in the trial court that
> C.M.C. 408.29 was unconstitutionally vague and overbroad, or was unreasonable
> and not rationally related to the health, safety, and general welfare of the public,
> these issues have been waived on appeal. Accordingly, we are constrained to
> affirm the trial court's judgment.

*City of Cincinnati v. June Hill*, Case No. C080758 (1st Dist. Ohio App. Aug. 5, 2009) (slip op. at 2). Plaintiff appealed to the Ohio Supreme Court which dismissed the appeal as not involving any substantial constitutional question. (Doc. 11, Exh. 5).

As a general rule, a federal civil action brought under § 1983 is not a venue for re-litigating issues that were previously decided in a prior state criminal case. *See Allen v. McCurry,* 449 U.S. 90, 103-105 (1980) (holding that the principles of collateral estoppel and *res judicata* apply in § 1983 actions). *See also San Remo Hotel, L.P. v. City & County of San Francisco,* 545 U.S. 323, 336 (2005). A federal court must give the same preclusive effect to a state court judgment in a Section 1983 action as would be given in the state court system in which the federal court sits. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 83 (1984); *Allen*, 449 U.S. at 96; *see also* 28 U.S.C. § 1738. "[I]f an individual is precluded from litigating a suit in a state court by the traditional principles of res judicata,[3] he is similarly precluded from litigating the suit in federal court." *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987) (citation omitted). If a state court would prohibit relitigation of claims that could have been but were not raised in the earlier state court action, then such claims are precluded in a subsequent federal Section 1983 action. *Migra*, 465 U.S. at 83. The prior state court action will preclude litigation in federal court when the litigant against whom the preclusive effect is sought had a full and fair opportunity to litigate the claims or issues decided by the state courts. *Allen,* 449 U.S. at 104. A federal court must resort to state law to determine the preclusive effect of a state court ruling. *Migra,* 465 U.S. at 84. *See Darrah v. City of Oak Park,* 255 F.3d 301, 311 (6th Cir. 2001).

---

[3]"Res judicata involves two forms of preclusion. Claim preclusion provides that 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981). The doctrine of issue preclusion, otherwise known as collateral estoppel, provides that 'a decision precludes relitigation of the same issue on a different cause of action between the same parties once a court decides an issue of fact or law necessary to its judgment.' *Duncan v. Peck,* 752 F.2d 1135, 1138 (6th Cir. 1985)." *Lynch,* 826 F.2d at 1537, n.1.

11

"It has long been the law of Ohio that an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in the first lawsuit." *National Amusements, Inc. v. City of Springdale,* 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180  (1990), *cert. denied,* 498 U.S. 1120 (1991) (emphasis in the original). *See also Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (1995) ("[t]he doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it"). *See also State v. Dick,* 137 Ohio App.3d 260, 264, 738 N.E.2d 456, 460 (Ohio App. 3d Dist. 2000) (*"res judicata* bars a subsequent action based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action, *whether or not that particular claim was litigated,* so long as there has been a valid, final judgment rendered upon the merits") (emphasis in the original) (citing *Grava,* 73 Ohio St.3d 379, 653 N.E.2d 226 at syllabus).  Under Ohio law, *res judicata* bars a claim when: (1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) the second action involves the same parties or their privies as the first; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the transaction or occurrence that was the subject matter of the previous action. *Portage County Bd. of Commissioners v. City of Akron,* 109 Ohio St.3d 106, 123, 846 N.E.2d 478, 495 (2006).  A "transaction" is defined as a "common nucleus of operative facts." *Id.* (citation omitted).

By challenging the constitutionality of CMC 408-29 in the instant federal Section 1983 action, plaintiff is attempting to relitigate a claim arising out of the transaction that was the subject matter of her state criminal court proceeding brought against her by the City of Cincinnati. Plaintiff's state court prosecution offered her a full and fair opportunity to challenge the constitutionality of the City ordinance.  In fact, plaintiff appealed her conviction on the basis that CMC 408-29 was unconstitutionally vague and overbroad.  Although  the Ohio Court of Appeals did not reach the merits of plaintiff's claim because of her failure to raise it in the trial court, the

doctrine of *res judicata* bars the claim whether or not it was actually litigated. *Grava,* 73 Ohio St.3d at 383, 653 N.E.2d 229-30. Plaintiff's constitutional challenge to the CMC 408-29 arose from a nucleus of facts that was the subject matter of her criminal prosecution and her challenge was a claim that "might have been litigated" in the state trial court proceeding. *Id.*; *National Amusements, Inc.,* 53 Ohio St.3d at 62, 558 N.E.2d at 1180. As such, principles of *res judicata* would bar plaintiff from relitigating this claim in any subsequent state court action under Ohio law. *Id.* This Court is required to give the same preclusive effect to the previous state court judgment as would be given by the Ohio courts. *Migra,* 465 U.S. at 83-84, 85. Thus, plaintiff's identical claim raised in this Section 1983 action is likewise barred by the doctrine of *res judicata* which renders the judgment in plaintiff's state court criminal action binding as to all issues which were litigated or could have been litigated. Accordingly, defendant City of Cincinnati's motion to dismiss plaintiff's claim that CMC 408-29 is unconstitutional should be granted on the basis of *res judicata*.

Plaintiff also alleges a cause of action against the City of Cincinnati for a violation of 42 U.S.C. § 2000d. Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. The term "program or activity" and the term "program" are defined as "all of the operations of a department, agency, . . . or other instrumentality of a State or of a local government." 42 U.S.C. § 2000d-4a(1)(A).

To state a claim for relief under Title VI, plaintiff must allege that the "program or activity" receives federal funding. *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996). Plaintiff must also allege facts establishing a nexus between the alleged discriminatory conduct and the specific program to which federal funds were directed. *David K. v. Lane*, 839

F.2d 1265, 1275-76 (7th Cir. 1988). *See also* 42 U.S.C. § 2000d-1 ("Compliance with any requirement pursuant to [Title VI] . . . shall be limited in its effect to the particular program, or part thereof, in which . . . noncompliance has been so found."). Plaintiff must also allege facts indicating that she was intentionally discriminated against on the basis of her race and that her race was a determining or motivating factor in the decision to discriminated against her. *Buchanan*, 99 F.3d at 1356. *See also Alexander v. Sandoval*, 532 U.S. 275, 293 (2001) (holding no private right of action for claim of disparate impact under Title VI). "In other words, proof of discriminatory intent is critical. It follows that where the decisionmaker is motivated by a factor other than the excluded party's race, there can be no intentional discrimination." *Buchanan*, 99 F.3d at 1356. (citations omitted).

Here, plaintiff's complaint fails to state a plausible claim for relief for discrimination under Title VI because she fails to allege any facts showing the City of Cincinnati intentionally discriminated against her on the basis of her race, African American. Title VI requires plaintiff to allege facts showing intentional discrimination by defendant City of Cincinnati. Plaintiff alleges that "Defendant City of Cincinnati Police Department through its 'detail' officers discriminate in the issuing of enforcement citations against taxicab drivers of African American descent and other driver[s] of foreign origin, namely Africans and Persons of Middle Eastern descent" while routinely ignoring pedestrian violations by Caucasian persons at various bars and sporting events throughout the city. (Doc. 3, ¶¶73-74). She alleges she received a traffic citation in 2009 when her vehicle was stopped in traffic and she was flagged down by a customer in the street after a concert at a local music venue. Plaintiff alleges she was acquitted when the judge realized she was ticketed for "hitchhiking." (Doc. 3, ¶80).

Plaintiff alleges no facts from which this Court may plausibly infer that City of Cincinnati police officers discriminated against her because of her race. While plaintiff appears to allege a claim of disparate treatment by alleging minority taxi drivers are discriminated against by police officers in the issuance of traffic citations, she fails to allege any facts showing white taxi drivers are treated more favorably under similar circumstances. Rather, she compares herself to white *pedestrians* who do not receive citations for pedestrian violations. Plaintiff fails to allege the white pedestrians were similarly situated to minority taxi drivers who were allegedly discriminated against. *See Johnson v. City of Clarksville*, 186 Fed. Appx. 592, 595 (6th Cir. 2006) (assuming *McDonnell Douglas* burden shifting applies to Title VI claims and requiring showing that similarly-situated members of the non-protected class received more favorable treatment than plaintiff received). Plaintiff's complaint does not allege facts plausibly showing that her race was a motivating or substantial factor in the issuance of the traffic citation. Therefore, defendant City of Cincinnati's motion to dismiss plaintiff's Title VI claim should be granted.

Plaintiff alleges no other claims against the City of Cincinnati. Therefore, the City of Cincinnati's motion to dismiss should be granted in its entirety.

**V. The individual defendants' motions to dismiss.**

The individual defendants all claim they are entitled to qualified immunity from suit in this case. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from

15

individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the plaintiff's submission, was the right clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson v. Callahan,* 129 S.Ct. 808, 818 (2009).

In determining whether a right is "clearly established" for purposes of the qualified immunity analysis, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202.  This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*, 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

**A. The motion to dismiss the complaint against defendant Police Sergeant Michael Williams should be granted.**

Plaintiff's complaint alleges that she was verbally harassed by defendant Officer Williams when she attempted to discharge a passenger at a business, as opposed to a designated drop off

point for taxi cabs, in the Mt. Adams neighborhood. Plaintiff alleges that defendant Williams has subjected her to "constant verbal abuse" and threats since her protest at the Convention Center in September 2008.

Plaintiff's complaint fails to state a claim for relief against defendant Williams because mere verbal threats and abuse do not infringe any constitutional rights and are not actionable under § 1983. *See Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989); *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985). *See also Taylor v. City of Falmouth*, 187 Fed. Appx. 596 (6th Cir. 2006) (and cases cited therein). The facts alleged by plaintiff do not show defendant Williams violated a constitutional rights. Accordingly, defendant Williams' motion to dismiss should be granted.

### B. The motion to dismiss the complaint against defendant Police Lt. Hungler should be granted.

Plaintiff alleges that on July 17, 2008, she was summoned to the Public Vehicles Department of the City of Cincinnati. Upon her arrival, defendant Lt. Hungler "confronted Plaintiff, demanding that [she] surrender [her] Public Vehicle (the taxi drivers license) badge and not to return until I was wearing a 'shirt with sleeves.'" (Doc. 3, ¶46). Plaintiff alleges that defendant Hungler "illegally seized" her Public Vehicle Badge.

Plaintiff's complaint sets forth the City of Cincinnati Rules and Regulations for Taxicab Drivers which states, in relevant part, that "Drivers must wear full length trousers (slacks or blue jeans), shirt (with collars and sleeves) and shoes. A female driver may wear a skirt." (Doc. 3, ¶47). Plaintiff alleges that at the time, she was wearing a "summer dress" and was not in compliance with the City's dress code for taxi drivers requiring drivers to wear a "shirt with sleeves." Plaintiff alleges that while the code permits female drivers to wear skirts, it says nothing

17

about dresses. She alleges that females "do not wear shirts in this society," but rather "blouses," and that no regulations governing the wearing of blouses have ever been issues by the Public Vehicle Squad. (Doc. 3, ¶¶49, 53). Plaintiff states she was assessed "one violation mark" for violating defendant Hungler's "fantasy dress code." (Doc. 3, ¶54). Plaintiff alleges that defendant Hungler's actions violated her Fourth Amendment right against unreasonable seizures, right to equal protection under the Fourteenth Amendment, and right to due process.

Plaintiff's complaint fails to state a plausible claim for relief under the Fourth Amendment against defendant Hungler. The Fourth Amendment prohibits unreasonable searches and seizures. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). To state a claim for relief under the Fourth Amendment, plaintiff must allege facts showing that defendant Hungler's actions (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding circumstances. *See, e.g., Brower v. County of Inyo,* 489 U.S. 593, 595-600 (1989). Seizures of property are protected by the Fourth Amendment even where there has been no search within the meaning of the Fourth Amendment. *Soldal v. Cook County, Ill.*, 506 U.S. 56 (1992). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Id.* at 61 (citation omitted). "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Edmond,* 531 U.S. at 37 (citing *Chandler v. Miller,* 520 U.S. 305, 308 (1997)). Where there is no consent or valid warrant, "such seizures can be justified only if they meet the probable cause standard." *Soldal,* 506 U.S. at 66 (citing *Arizona v. Hicks,* 480 U.S. 321, 326-27 (1987)).

Assuming, arguendo, that defendant Hungler's confiscation of plaintiff's license was a "seizure" within the meaning of the Fourth Amendment, plaintiff fails to allege facts showing that the seizure was unreasonable under the circumstances.  Plaintiff admits that when she appeared before defendant Hungler she was in violation of the Rules and Regulations for Taxicab Drivers requiring shirts with sleeves and collars. (Doc. 3, ¶¶47, 51, 55).  Thus, defendant Hungler had probable cause to believe plaintiff was not in compliance with the Rules and Regulations.  Under the circumstances alleged by plaintiff, a reasonable officer in defendant Hungler's position would believe he was authorized to confiscate plaintiff's license.  Plaintiff has not cited, nor has the Court discovered, any case law showing defendant Hungler's actions violated any clearly established law or that his actions were "objectively unreasonable" in light of clearly established law. *See Kennedy v. City Of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010) (burden of disproving qualified immunity rests with the plaintiff).  Therefore, the Court  concludes that defendant Hungler is entitled to qualified immunity on plaintiff's Fourth Amendment claim.

Plaintiff's allegations are also insufficient to state an actionable § 1983 claim to the extent she alleges she was deprived of her taxi license without due process of law.  To state a claim for relief for a denial of due process, plaintiff must allege facts showing she was deprived of a constitutionally-protected property or liberty interest and that the deprivation occurred without due process. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 334 (6th Cir. 2010) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  Plaintiff had a protected property interest in her taxicab license. *See Dixon v. Love*, 431 U.S. 105, 112 (1977); *see also Padberg v. McGrath-McKechnie*, 203 F. Supp.2d 261, 276 (E.D.N.Y. 2002) (taxicab drivers have a property interest in their taxicab licenses sufficient to trigger due process protection).  However, plaintiff alleges no facts

indicating she was denied that property interest without due process of law. The government need not always provide a hearing prior to the initial deprivation of property and post-deprivation procedures may satisfy due process mandates. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (and cases cited therein). Plaintiff does not allege she was denied the right to contest the confiscation of her license, nor does she allege how long she was without her license. In fact, plaintiff alleges no facts indicating what happened after she turned in her license to defendant Hungler.[4] Without any additional facts demonstrating plaintiff was deprived of her taxicab license without an opportunity to be heard on the deprivation, plaintiff's conclusory allegation of a denial of due process cannot suffice. *Iqbal*, 129 S.Ct. at 1950. Therefore, plaintiff's due process claim against defendant Hungler should be dismissed.

Finally, plaintiff's complaint fails to state a claim for relief against defendant Hunger for a denial of equal protection. In general, the Equal Protection Clause requires that "all persons similarly situated should be treated alike." *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). The guarantee of equal protection "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a claim for relief under § 1983 for a violation of equal protection, plaintiff must allege facts showing she was intentionally discrimination against because of her membership in a particular class or group singled out for discriminatory treatment, not merely that

---

[4] The allegations of plaintiff's complaint indicate her license was returned at some point after defendant Hungler confiscated the license.

20

she was treated unfairly from an individual perspective. *See Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 341 (6th Cir. 1990); *Joyce v. Mavromatis,* 783 F.2d 56, 57 (6th Cir. 1986).

Plaintiff alleges no facts indicating defendant Hungler intentionally discriminated against her because of membership in a protected class or suspect classification. *City of Cleburne,* 473 U.S. at 440; *Joyce,* 783 F.2d at 57. Plaintiff has not alleged specific facts from which the Court may plausibly infer that she was intentionally treated differently from other similarly situated taxicab drivers. *Iqbal,* 129 S.Ct. at 1949; *Village of Willowbrook,* 528 U.S. at 564. To the contrary, the facts alleged in plaintiff's complaint indicate she was treated like all other taxicab drivers who were required to wear shirts with sleeves. Her conclusory allegations of unequal treatment are insufficient to state a claim for relief under the Equal Protection Clause.

### C. The motion to dismiss the complaint against defendant Police Officer Krauser should be granted in part and denied in part.

Plaintiff alleges that defendant Krauser's actions violated her First Amendment rights to freedom of religion, association, and expression, Fourth Amendment right against unreasonable seizures, right to equal protection under the Fourteenth Amendment, and right to due process. Plaintiff alleges that on September 10, 2008, Officer Krauser confiscated the "courtesy vehicle" placard displayed on plaintiff's vehicle that she had purchased from National Baptist Convention officials in order to provide courtesy transportation to convention participants. The complaint alleges that defendant Officer Krauser advised plaintiff that taxicabs could not be courtesy vehicles. Plaintiff demanded the return of the placard, but was refused and told to move her vehicle to the taxicab stand. (Doc. 3, ¶¶16-20). The complaint alleges she then contacted the district one police station to complain about the confiscation of the courtesy vehicle placard and

was assured by supervisory personnel that it would be returned. (Doc. 3, ¶21).  When she returned

to the courtesy vehicle line at the convention center, she was again chased away by defendant

Krauser. *Id.*  Plaintiff further alleges that she was advised by the Office of Public Vehicles that no

administrative rules regulating to the use of taxicabs as courtesy vehicles had been issued. (Doc.

3, ¶26).

Plaintiff's complaint fails to state a claim for relief for a denial of due process against

defendant Krauser.  The Court assumes for purposes of the motion to dismiss that plaintiff's

courtesy placard constitutes a property interest under the Fourteenth Amendment.  Plaintiff alleges

that the confiscation of the placard by defendant Krauser was unauthorized and intentional.

However, plaintiff has not met her burden of pleading and proving that her state remedies for

redressing the confiscation of the placard are inadequate.  In order to assert a due process claim

for the deprivation of property by a random, unauthorized act, plaintiff must first "plead . . . that

state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066

(6th Cir. 1983), *cert. denied*, 469 U.S. 834 (1984).  *See also Hudson v. Palmer*, 468 U.S. 517

(1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds, Daniel v.

Williams,* 474 U.S. 517 (1984).  "If satisfactory state procedures are provided in a procedural due

process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v.

Jefferson County Pub. Sch. Sys.,* 360 F.3d 583, 587-88 (6th Cir. 2004).  Accordingly, in order to

state a procedural due process claim under section 1983 "the plaintiff must attack the state's

corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d

726, 731 (6th Cir. 1991) (quoting *Vicory*, 721 F.2d at 1066).  A plaintiff "may not seek relief

under Section 1983 without first pleading and proving the inadequacy of state or administrative

processes and remedies to redress her due process violations." *Jefferson*, 360 F.3d at 588 (citing *Parratt*, 451 U.S. 527; *Mansfield Apt. Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1475 (6th Cir. 1993)).

Plaintiff has not alleged any facts even remotely indicating that existing remedies under Ohio law are inadequate to redress the alleged deprivation of her courtesy vehicle placard. *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999). "State tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses." *Fox*, 176 F.3d at 349. Because plaintiff does not allege facts showing her post-deprivation remedies in the State of Ohio are inadequate, her complaint is subject to dismissal for failure to state a claim for relief for a denial of due process against defendant Krauser.

Plaintiff's complaint also fails to state a plausible claim for relief for a denial of equal protection. Plaintiff fails to allege facts showing defendant Krauser intentionally discriminated against her on the basis of a suspect classification. *City of Cleburne*, 473 U.S. at 440; *Joyce*, 783 F.2d at 57. Plaintiff has not alleged specific facts from which the Court may plausibly infer that she was intentionally treated differently from other similarly situated courtesy vehicle drivers because of her race, gender, or any other suspect classification. *Iqbal*, 129 S.Ct. at 1949; *Village of Willowbrook*, 528 U.S. at 564. Thus, plaintiff's equal protection claim against defendant Krauser should be dismissed.

Plaintiff's Fourth Amendment claim against defendant Krauser should be permitted to proceed at this juncture. Liberally construed, plaintiff alleges that the courtesy vehicle placard was seized by defendant Krauser without probable cause to believe that plaintiff was in violation of any code or ordinance prohibiting taxicab drivers from providing courtesy transportation. The

protection of the Fourth Amendment extends to seizures of personal property and such seizures must be based on probable cause. *See Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F.3d 523, 543-44 (6th Cir. 2002) (and cases cited therein). While defendants argue that "Officer Krauser had probable cause to believe that Hill was using a counterfeit placard and also had probable cause to believe that a commercial taxicab was ineligible to be a 'courtesy vehicle' at the Convention" (Doc. 13 at 5), this argument is based not on the facts alleged by plaintiff in her complaint, but on the conclusions included in the report of the IIS investigation. This Court must accept plaintiff's factual allegations as true and cannot rely on defendants' version of the facts in ruling on a motion to dismiss. *Erickson,* 551 U.S. at 93; *Twombly,* 550 U.S. at 555-56. At this juncture, defendant Krauser is not entitled to qualified immunity from suit based on plaintiff's Fourth Amendment claim.

Plaintiff complaint also alleges that defendant Krauser violated her rights of freedom of religion, freedom of association, and freedom of expression in contravention of the First Amendment. The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The guarantees of the First Amendment are made applicable to the States through the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940). However, plaintiff has failed to allege any facts whatsoever from which the Court could plausibly conclude that defendant Krauser prohibited plaintiff from practicing her religion or exercising her freedom of speech or association. Krauser may have allegedly prevented plaintiff from providing courtesy transportation to conventioneers,

24

but plaintiff fails to allege any facts indicating that Krauser's actions inhibited the practice of

plaintiff's faith or prevented her from otherwise associating with other members of her faith.

Even if Krauser's actions did violate the Constitution, he would be entitled to qualified immunity

on plaintiff's First Amendment claims.  Plaintiff has not cited and the Court has not found any

clearly established law that an action by a police officer which has an incidental effect on a

person's ability to associate with persons of their own faith under the circumstances alleged by

plaintiff violates the First Amendment to the United States Constitution.  Nor does plaintiff allege

facts showing Krauser's actions prevented her from protesting about this action, which she in fact

did.  *See* Doc. 3, ¶23.  Accordingly, the Court should dismiss plaintiff's First Amendment claims

against defendant Krauser.

Plaintiff also alleges two state law claims against defendant Krauser: false light invasion

of privacy and defamation.  Plaintiff alleges that after Krauser confiscated her courtesy vehicle

placard, she filed a formal complaint contesting his actions.  An internal investigation was

undertaken by police officials in response to plaintiff's complaint.  Plaintiff cites to the following

statements in the Internal Investigations Section report in support of her state law claims:

> Specialist Krauser asked Ms. Hill how she obtained the placard.  Ms. Hill told
> Specialist Krauser she obtained the placard from the National Baptist Convention
> and she paid $75.00 in United States currency for it; however, Ms. Hill would not
> identify the person she purchased the placard from.  Specialist Krauser believed
> Ms. Hill had obtained a counterfeit placard.

(Doc. 3, ¶30) (emphasis supplied by plaintiff).  The complaint alleges that defendant Krauser

"now accuses me of criminal behavior in an attempt to cover up his actions." (Doc. 3, ¶31).

Plaintiff alleges that defendant Krauser "by snatching my 'courtesy permit' and then alleging that

said permit was 'counterfeit' after converting said permit to his own use placed and continues to place the Plaintiff in a 'false light' since the item was acquired legitimately." (Doc. 3, ¶94). Plaintiff also alleges that defendant Krauser is liable for "character defamation under Ohio for inferring criminal behavior upon the innocent Plaintiff." *Id.*

Ohio recognizes a cause of action for false-light invasion of privacy. "[O]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 113 Ohio St.3d 464, 866 N.E.2d 1051 (2007) (syllabus). To state a claim for relief for false light, plaintiff must allege facts showing that the alleged statements made by defendant Krauser were untrue. *Id.* at 471, 866 N.E.2d 1051. Plaintiff must also allege facts demonstrating that the information was "publicized," which is different from "published." *Id.* Publicity means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge * * *." *Id.* (quoting Restatement of the Law 2d, Torts, Section 652D, Comment a).

In this case, plaintiff's complaint fails to state a claim for relief for false light because she alleges no facts showing defendant Krauser communicated private facts to the public at large or to enough people to cause the matter to become public knowledge. Plaintiff does not allege that defendant Krauser communicated his statements about the September 2008 incident with plaintiff to anyone other than the IIS investigator. Plaintiff fails to allege any facts from which the Court

26

may plausibly infer that the information was "publicized" to satisfy this element of plaintiff's false-light invasion of privacy claim. *See Brown v. O'Bannon*, 84 F. Supp.2d 1176, 1180-81 (D. Colo. 2000); *Ali v. Douglas Cable Communications*, 929 F. Supp. 1362, 1383 (D. Kan. 1996). Therefore, the false-light invasion of privacy claim against defendant Krauser should be dismissed.

Under Ohio law, "defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 331, 883 N.E.2d 1060, 1064 (2008) (quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1298 (1995)). To state a claim for relief for defamation, plaintiff must allege facts showing: "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory *per se* or caused special harm to the plaintiff." *Woods v. Summertime Sweet Treats, Inc.*, 2009 WL 3806179, at *4 (Ohio App. 7th Dist. 2009) (quoting *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 206).

Plaintiff alleges sufficient facts to state a claim for relief for defamation under Ohio law. The complaint alleges that defendant Krauser, in statements made to a third person, falsely accused plaintiff of obtaining a counterfeit placard which implied that plaintiff committed the crime of fraud. A statement implying commission of a crime is defamatory per se. *See Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 109, 916 N.E.2d

484, 487 (Ohio App. 9th Dist. 2009) (and cases cited therein).  Therefore, plaintiff's complaint states a claim for relief for defamation under Ohio law.[5]

Defendant Krauser, however, contends he is entitled to statutory immunity from plaintiff's state law claim of defamation.  Employees of a political subdivision under Ohio law are entitled to a presumption of immunity in the performance of their official duties.  Ohio Rev. Code § 2744.03(A)(6) provides that "an individual employee is immune from liability in performing his job unless (a) his acts or omissions are manifestly outside the scope of his employment; (b) his acts or omissions are malicious, in bad faith, or wanton or reckless; or (c) liability is expressly imposed upon the employee by another statute." *Myrick v. Cincinnati*, No. C-080119, 2008 WL 5384298, at *4 (Ohio App. 1st Dist. Dec. 26, 2008).

In this case, plaintiff alleges that defendant Krauser falsely reported that she was in possession of a counterfeit courtesy vehicle placard and that he made this report in an effort to cover up his unlawful seizure of the placard.  These allegations of improper motive on the part of defendant Krauser, taken as true for purposes of the motion to dismiss, support a plausible inference of bad faith, malicious purpose or recklessness.  *See Woods v. Miamisburg City Schools*, 254 F. Supp.2d 868, 881 (S.D. Ohio 2003) (defining "malicious," "bad faith," and "reckless" under Ohio law).  Therefore, the Court cannot conclude that defendant Krauser is immune from liability under Ohio Rev. Code § 2744.03(A)(6) at this juncture.  Accordingly, defendant Krauser's motion to dismiss plaintiff's defamation claim should be denied.

---

[5]The Court recognizes that the statements made by a police officer during an internal investigation may be protected by a qualified privilege. *See, e.g., Black v. Cleveland Police Dept.*, 96 Ohio App.3d 84, 89-90, 644 N.E.2d 682, 685 (Ohio App. 8th Dist. 1994).  However, defendant Krauser has not asserted the protection of this privilege, which plaintiff may in any event rebut by clear and convincing evidence. *Id.*

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant City of Cincinnati's motion to dismiss be **GRANTED**.

2. Defendant Williams' motion to dismiss be **GRANTED**.

3. Defendant Hungler's motion to dismiss be **GRANTED**.

4. Defendant Krauser's motion to dismiss be **GRANTED** in part and **DENIED** in part as set

forth in this Report and Recommendation.

Date: 7/15/10

Timothy S. Hogan
United States Magistrate Judge

29

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JUNE HILL,                                          Case No. 1:09-cv-800
    Plaintiff                               Dlott, J.
                                                    Hogan, M.J.

    vs

CITY OF CINCINNATI, et al.,
    Defendants.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by ( *Printed Name* ) C. Date of Delivery |
| 1. Article Addressed to:<br><br>June Hill<br>3094 Losantiville<br>Cinti, OH 45213 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)* ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7002 3150 0000 8389 8510 |

| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-02-M-1540 |

1:09 cv 800  (Doc. 15)